IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES FORTUNATO, DOROTHY FORTUNATO, husband and wife and, JENNIFER FORTUNATO, daughter<br><br>    Plaintiffs,<br><br>    v.<br><br>DAVID MAY, NAGLE TOLEDO, INC., NAGLE LINE, INC., NAGLE EQUIPMENT COMPANY, NAGLE TRUCKING, MARK NEWTON dba SPYDER ENTERPRISES, INC., SPYDER ENTERPRISES, INC., SUN AIRE TRANSPORT CORPORATION,<br><br>    Defendants,<br>    Third-Party Plaintiffs<br><br>    v.<br><br>JOHN A RICHARDSON, d/b/a J&J AMUSEMENTS, INC.<br><br>    Third-Party Defendant. | Civil Action 04-1140 |

## MEMORANDUM OPINION

CONTI, District Judge.

In this memorandum opinion, the court considers the motion for partial summary judgment (Doc. No. 56 ("defendants' motion")) filed by defendants David May ("May"), Nagle Toledo, Inc., Nagle Line, Inc., Nagle Equipment Company, Nagle Trucking, Mark Newton d.b.a. Spyder Enterprises, Inc., and Spyder Enterprises, Inc. Plaintiff agreed to dismiss all claims

1

against Nagle Line, Inc., Nagle Equipment Company, and Nagle Trucking. Those parties will be dismissed and the remaining defendants are May, Nagle Toledo, Inc., Mark Newton d.b.a. Spyder Enterprises, Inc., and Spyder Enterprises Inc. (collectively "defendants" or "third-party plaintiffs"). Defendants' motion seeks summary judgment with respect to claims made by plaintiff Jennifer Fortunato[1] ("plaintiff" or "Fortunato") against defendants. Plaintiff agreed to withdraw several of the claims and allegations she asserted against defendants in the complaint. After reviewing the complaint, defendants' motion and plaintiff's concessions, the court recognizes that there are three remaining claims against defendants: (1) negligent operation of a motor vehicle against May; (2) negligent supervision[2], and negligent entrustment against Nagle Toledo, Inc., Mark Newton d.b.a. Spyder Enterprises, Inc., and Spyder Enterprises, Inc. and (3) vicarious liability for the negligence of May against Nagle Toledo, Inc., Mark Newton d.b.a. Spyder Enterprises, Inc., and Spyder Enterprises, Inc. In defendants' motion, defendants seek partial summary judgment in their favor with respect to plaintiff's negligent supervision and negligent entrustment claims against Nagle Toledo, Inc., Mark Newton d.b.a. Spyder Enterprises, Inc., and Spyder Enterprises, Inc.

The court will also consider the motion for summary judgment (Doc. No. 53 ("third-party defendant's motion")) filed by third-party defendant John A. Richardson, d/b/a J & J

---

1  Plaintiffs James and Dorothy Fortunato settled their claims and the only remaining claims are those of their daughter Jennifer Fortunato. (Combined Concise Statement of Material Facts Regarding Defendants' Motion for Partial Summary Judgment (Doc. No. 71) ("Defs.' facts").)

2  For ease of reference, the claim referred to generally by the court as a "negligent supervision" claim includes allegations by plaintiff of negligent supervision of an employee, negligent hiring and negligent retention.

2

Amusements ("Richardson" or "third-party defendant") with respect to all claims made by the third-party plaintiffs against Richardson. Third-party plaintiffs asserted a claim of negligence against Richardson as the owner of the tractor trailer driven by James Fortunato for allegedly supplying an unsafe vehicle with inoperable lights. Richardson seeks summary judgment in his favor arguing that there has been no competent evidence presented to show that the lights were inoperable or defective at the time of the accident. After considering the joint statements of material facts and the submissions of the parties, the court will grant defendants' motion and enter judgment in favor of Nagle Toledo, Inc., Mark Newton d.b.a. Spyder Enterprises, Inc., and Spyder Enterprises Inc. with respect to plaintiff's negligent supervision and negligent entrustment claims. The third-party defendant's motion for summary judgment will be denied as moot, but the claim against the third-party defendant will be dismissed without prejudice for the reasons set forth herein.

*Factual Background*

This lawsuit originated from a motor vehicle accident between two tractor trailers on August 5, 2002. (Defs.' facts ¶ 1.) In the early morning hours on August 5, 2002, James Fortunato was operating a tractor trailer with a double trailer on I-80 westbound in Jefferson County, Pennsylvania when a second westbound tractor trailer operated by May rear-ended Mr. Fortunato's vehicle. (Id. ¶ 3; Combined Concise Statement of Facts Regarding Third-Party Defendant's Motion for Summary Judgment (Doc. No. 72) ("Third-party facts") ¶ 1.) At the time of the accident, plaintiff was riding as a passenger in the tractor trailer operated by her father, James Fortunato. (Defs.' Facts ¶ 2.) Plaintiff alleged serious physical and mental injuries as a result of the accident. (Id.)

At the time of the accident, May was working as an agent of Mark Newton. (Id. ¶ 6.) Mark Newton d/b/a Spyder Enterprises, Inc. leased the tractor driven by May from Nagle Toledo, Inc. (Id. ¶ 7.) The tractor trailer May was driving at the time of the accident was being operated under the motor carrier authority of Nagle Toledo, Inc., and May was acting within the course and scope of his employment with Nagle Toledo, Inc., and Mark Newton d/b/a Spyder Enterprises. (Id. ¶ 9.) The trailer driven by James Fortunato at the time of the accident was owned by third-party defendant. (Third-party def.'s facts ¶ 2.)

Following the accident, state trooper Terry Jordan ("Jordan") was called to the scene to investigate. (Id. 11.) Jordan was not an accident reconstructionist. (Id. 12.) Jordan investigated the scene, interviewed May and James Fortunato, and wrote a report. Jordan reported that the running lights on the front trailer of James Fortunato's rig were on and operational when he checked them after the accident. Jordan reported that the tail lights on the rear trailer of James Fortunato's rig were not on when he arrived at the scene. Jordan noted that the left tail light was damaged and pushed in under the trailer by the impact of the collision. Jordan took the cover off the right tail light and inspected the filament. Upon inspection of the filament, Jordan opined that the tail light was not operable at the time of the collision. Jordan noted in his report:

> While at the scene I examined the lights on [Fortunato's vehicle.] The lights on the towing vehicle and the first trailer were in working order. Upon looking at the lights on the second trailer evidence would show that the lights were not working on this trailer. Upon opening the lights there was no sign of heat shock to the lights. If the lights would have been working the filament in the lights should have been heated and stretched in the direction of the crash.

(Defs.' facts App. Ex. 2 at 9.) In explaining his heat shock theory, Jordan testified in his deposition:

> Normally, if the light's on and it's heated, what will happen in some cases is that when there's an impact made with enough force that it will actually push the filament in the direction the crash was going.

(Jordan, Dep. 27 (May 22, 2005).) Jordan testified that he was not sure whether he tested the right brake light or the right turn signal. (Id.) Jordan testified that the accuracy of his conclusion may depend on which light he tested, and he could not be sure of the accuracy. (Id.) Jordan did not conduct any follow up investigation, and the light fixture in question is no longer available for inspection. (Third-party def.'s facts ¶ 18,19 & 24.) Jordan issued a citation to May for failing to maintain a safe speed, and a citation to James Fortunato for failing to conform to general lighting requirements. (Jordan, Dep. 18-20.)

In his deposition, May related the following description of the accident:

> I was coming down, oh, probably in the area of the 92, 92 ½ mile marker. There's a sharp curve there, just before you're coming down. I slowed down. It's a very sharp curve. I started coming up like a little grade there. All of a sudden something is in front of me with no lights. I just clobbered it, whatever it was. I didn't know it was a tractor trailer or whatever it was at the time when it hit. And I came to a dead stop.

(May Dep. 123 (April 25, 2006).) May alleges that he did not see any lights on the trailer he struck, and that he was unable to avoid the collision because of the lack of lights:

> I didn't – when I first went around the bend, I didn't see nothing. Then all of a sudden, there was something right in front of me with no lights at all on it. I thought it was a sign or something. I just had that reaction. It was right there in front of me. I hit the brake right then and there.

(Id. 129.) When asked whether there could have been lights on the trailer, May responded:

> I would have seen the lights if there were lights on it. I would have
> had the time. If there were lights on that thing at all, I would have
> seen them.

(Id. 183.) May testified that if there were lights on the trailer, he could have avoided the collision:

> Q. Are you telling me, sir, that you weren't sure whether the lights
> in the back of that trailer were on or off because there was not
> ample time for you to see anything more than this big orange
> structure?
>
> A. There was no lights on the back of it because I would have
> seen it from when I come around the corner. This thing appeared.
> Probably because it had no lights that I hit it right away. If I would
> have had some warning, I probably could have done something,
> beat it out in the left lane or gone into the breakdown lane. I
> would have seen it.
>
> Q. You would have seen it?
>
> A. Yes.
>
> Q. And you are thinking you would have ample time to have
> avoided that vehicle in front of you?
>
> A. Yes, if they had lights on.
>
> Q. So how is it that you come to that conclusion?
>
> A. Because it was right there in front me with no lights on it, and
> it wasn't a flashing color that I would have seen maybe with my
> headlights until I was almost on top of it.

(Id. at 188-89.)

James Fortunato claimed that the lights on his trailer were on and that he had his four-way flashers on at the time of the accident. (Third-party def.'s facts ¶¶ 6-8.) James Fortunato testified that he conducted a pre-trip inspection of his lights before starting his trip the day of the accident. (Id. ¶¶ 5 & 6.) While describing the pre-trip inspection, James Fortunato testified in

6

his deposition as follows:

> Q. When you got to the Clearfield Fair and your tractor and two trailers were ready to go, what did you do?
>
> A. When I got there, they wasn't ready.
>
> Q. When they were ready, what did you do?
>
> A. I checked them, went around, turned on the lights inside and started it up, aired them all, checked all the lights and everything. Before I go, pre-trip.
>
> Q. It's a pre-trip inspection?
>
> A. Yes.
>
> Q. Mr. Fortunato, I want to know exactly what you did that night in terms of your pre-trip inspection. Let's go through this and tell me exactly what you did?
>
> A. I got in the truck, started the motor, turned all the lights on.
>
> Q. Let me ask you, are there lights on both trailers?
>
> A. Yes.
>
> ***
>
> Q. So you turn all the lights on?
>
> A. All the lights on, turn the four-ways on inside, go out and check the tires, see if they are all up and have everything checked, the lights, the turn signals and all of that and see all the lights working.
>
> Q. How do you see if all the lights are working?
>
> A. I walk around the truck.
>
> Q. That night before you left were all the lights working?
>
> A. Yes. . .

(Third-party def.'s facts App. Ex. C 31-32.) James Fortunato testified about his four-way flashers just before the accident:

> Q. Just prior to the accident did you have your four-way flashers on?
>
> A. Yes.
>
> Q. When is the last time you remember seeing the lights flashing before the accident?
>
> A. Before he just hit me, you know. After he hit me I don't know what happened.

(Id. at 46.) Plaintiff testified that she helped her father inspect the lights on the trailer before the trip on the night of the accident. (Third-party def.'s facts App. Ex. D.)

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any material or evidence that would be admissible or usable at trial in deciding the

merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F.Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or *otherwise made admissible in evidence*") (emphasis added).

> "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In addition, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing a genuine issue for trial.'" Id. (quoting FED. R. CIV. P. 56(e)).

*Analysis*

**I. Negligent entrustment, and negligent supervision claims**

In defendants' motion, defendants seek summary judgment in their favor with respect to the negligent supervision and negligent entrustment claims against Nagle Toledo, Inc., Mark Newton d.b.a. Spyder Enterprises, Inc., and Spyder Enterprises, Inc. For purposes of this motion, those defendants stipulated to an agency relationship with May. They agree that if May is found negligent, those defendants will be liable through the doctrine of respondeat superior for all damages caused by May's negligence. Defendants argue that the negligent entrustment and negligent supervision claims should be dismissed because they will create confusion for the jury,

9

risk multiple recovery, and produce unfairly prejudicial evidence.  Defendants noted that any finding of negligent supervision or negligent entrustment would first require a finding of negligence on May's part.  Defendants also assert that because plaintiff did not plead punitive damages, the full amount of any damages can be recovered from defendants for any injury caused by the negligence of May.  Defendants argue that the negligent entrustment and negligent supervision claims are unnecessary.

Plaintiff argues that Pennsylvania law recognizes separate causes of action for negligent entrustment and negligent supervision, different from a claim pursuant to a theory of respondeat superior, and that she should be permitted to pursue both theories.  Plaintiff expresses concern about defendants' sincerity in stipulating to an agency relationship.  Plaintiff notes that defendants have not stipulated to the agency relationship, but merely conceded the point "for purposes of this motion," and at trial plaintiff will need to prove agency.  Plaintiff argues that if she is not able to prove the agency relationship at trial, she should be able to alternatively prove the negligence of defendants through evidence of negligent entrustment and negligent supervision.

As a general rule, courts have dismissed claims for negligent supervision and negligent hiring when a supervisor defendant concedes an agency relationship with the co-defendant.  See Holben v. Midwest Emery Freight Sys., 525 F. Supp. 1224 (W.D. Pa. 1981).  The courts have recognized an exception to this rule when a plaintiff has made punitive damages claims against the supervisor defendant.  Id.  In such a case, the plaintiff can not receive complete relief based upon the primary defendant's negligence, and must also assert a separate negligence claim against the supervisor.  In this case, plaintiff did not assert a claim for punitive damages against

the supervisor defendants, and the court will dismiss the negligent supervision and negligent entrustment claims.³ The dismissal, however, is contingent upon defendants not contending the agency relationship with May at trial. If defendants challenge the agency relationship, plaintiff will be permitted to reassert the negligent supervision and negligent entrustment claims.

## II. Third-party defendant's motion for summary judgment

Third-party defendant asserts that summary judgment should be granted in its favor with respect to the claim asserted by the third-party plaintiff against it. Third-party defendant alleges there is no genuine issue for trial. Third-party plaintiff alleges a claim of negligence against Richardson as the owner of the trailer being driven by James Fortunato at the time of the accident. Third-party plaintiff alleges that the lights on the trailer were burned out or otherwise inoperable at the time of the accident, and Richardson knew or should have known that the trailer lights were inoperable and failed to take reasonable steps to protect plaintiffs.

Before considering third-party defendant's motion for summary judgment, the court will consider sua sponte whether the third-party claim brought pursuant to Federal Rules of Civil Procedure Rule 14 ("Rule 14") is properly before this court. The court can consider this issue upon its own motion, because of the court's "duty to plumb its subject matter jurisdiction in every case at all times." Morris v. Lenihan, 192 F.R.D. 484, 487 n.3 (E.D. Pa. 2000) (citing EF Operating Corp. v. American Bldgs., 993 F.2d 1046, 1048 (3d Cir.), *cert denied*, 510 U.S. 868

---

3     Plaintiff maintains that he may amend his complaint to add punitive damages against May after evidence is recovered from the black box regarding his speed at the time of the accident. Plaintiff will still be able to receive complete relief from the supervisor defendants for the negligence of May through respondeat superior whether or not punitive damages are sought from May.

(1993)).

Although Rule 14 does not create an independent basis for subject-matter jurisdiction, supplemental jurisdiction exists over a properly plead Rule 14 claim "under which a district court exercises jurisdiction over incidental matters raised by a case over which the court otherwise properly has jurisdiction." Toberman v. Copas, 800 F.Supp. 1239, 1241 (M.D. Pa. 1992) (citing 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1441 (2d ed. 1990)). On the other hand, a third-party claim which is not properly brought pursuant to Rule 14, falls outside the court's supplemental jurisdiction, and should be dismissed. Id. at 1242.

Upon a review of third-party plaintiffs' complaint and the record before the court, the court concludes that the claim is not a proper third-party claim pursuant to Rule 14, and it should be dismissed without prejudice. Rule 14 provides in relevant part, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it.*" FED. R. CIV. PRO. 14 (a)(1) (emphasis added). A third-party claim pursuant to Rule 14(a) can only be asserted if it is based upon a theory of secondary or derivative liability of the third-party defendant to the third-party plaintiff. F.D.I.C. v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994). In Bathgate, the United States Court of Appeals for the Third Circuit quoted:

> "A third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third-party is secondarily liable to defendant. If the claim is separate or independent from the main action, impleader will be denied."

Id. (quoting 6 WRIGHT ET AL, FEDERAL PRACTICE AND PROCEDURE § 1446 (2d ed. 1990)). It is

improper for a third-party complaint to set forth a claim of the third-party defendant's liability to the plaintiff. Toberman, 800 F.Supp. at 1242-43. It must set forth a claim of *secondary* liability in which the third-party defendant is liable under a theory of derivative liability recognized by the relevant substantive law such as indemnification or contribution. Id. (citing JACK FRIEDENTHAL, MARY KANE AND ARTHUR MILLER, CIVIL PROCEDURE § 6.9.)

In this case, third-party plaintiffs did not set forth derivative claims against third-party defendant. To the contrary, third-party plaintiffs only make allegations of third-party defendant's sole and direct liability to plaintiff. The third-party claim is for negligence and is framed as a defense to plaintiff's allegations rather than a derivative claim. Third-party plaintiffs argue that they were not negligent; rather it was third-party defendant who was negligent. This is not a proper basis to assert a third-party claim against a third-party defendant pursuant to Rule 14. To state a derivative claim, third-party plaintiffs would need to argue that if third-party plaintiffs are found negligent, they are entitled to be indemnified by third-party defendant. Under these circumstances, there is no independent basis for this court's jurisdiction over a claim by third-party plaintiffs against third-party defendant, and without a properly asserted third-party claim under Rule 14, there is no basis for supplemental jurisdiction over third-party plaintiffs' claim. See Morris, 192 F.R.D. at 487. The third-party claim, therefore, must be dismissed.

The court notes that defendants' third-party claim contained the conclusory allegation that third-party defendant "is liable over to the original defendants for indemnification and contribution." (Third-party compl. ¶ 10.) Defendants, however, did not assert any legal basis or argument in support of this contention, i.e. did not allege an indemnification agreement or some

13

other provision available under Pennsylvania law which creates a right of contribution, and insufficient facts were adduced in the record before the court to establish a basis for indemnification or contribution. Impleading a third-party defendant pursuant to Rule 14(a) is a procedural matter and does not create any substantive rights or expand the court's jurisdiction. 6 WRIGHT ET AL, FEDERAL PRACTICE AND PROCEDURE § 1441 (2d ed. 1990). Without an independent basis for indemnification or contribution, defendants' third-party claim must be dismissed. By reason of the dismissal of the third-party claim, third-party defendant's motion for summary judgment is moot and will not be addressed in this opinion.

The dismissal is without prejudice. If there is a factual basis for contribution or indemnification, and defendants would like the court to reconsider this issue, defendants must file a motion for the court to reconsider this matter within thirty days of the entry of this opinion.

## Conclusion

For the reasons set forth above, the court will grant defendants' partial motion for summary judgment with respect to plaintiff's negligent supervision and negligent entrustment claims. The court will also deny as moot third-party defendant's motion for summary judgment, and dismiss the third-party plaintiffs' claim against the third-party defendant without prejudice.

By the court:

Dated: March 16, 2009

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge